**IN THE UNITED STATES DISTRICT COURT**
**FOR THE EASTERN DISTRICT OF PENNSYLVANIA**

| | |
|---|---|
| **DEON WILLIAMS** | **CIVIL ACTION** |
| v. | NO. 19-797 |
| **ABRAHAM BENSHETRIT, D.M.D.** and **THE SALTZ DENTAL CENTER** | |

**MEMORANDUM RE: DEFENDANT'S MOTION FOR SANCTIONS**

**Baylson, J.**                                                                                                    **June 18, 2020**

**I.     Introduction and Background**

This is a case about dental malpractice that was originally filed on February 25, 2019. (ECF 1.) Defendants filed an answer in lieu of moving to dismiss the case under Rule 12 so discovery started shortly after the suit was initiated. The parties have been in discovery for more than one year and the contentiousness of the proceedings has required this Court's intervention on a number of occasions. The Court has repeatedly admonished the parties to have "a spirit of cooperation," (ECF 36, May 22, 2019 Hr'g Tr. 18:16–17), and to "increase their cooperative dialogue in completing discovery in this case," (ECF 99 ¶ 4). Despite this encouragement, the uncompromising attitude of counsel has persisted.

Currently pending before the Court is Abraham Benshetrit ("Defendant")'s[1] Motion for Sanctions to compensate Defendant for expenses caused by the conduct of Brendan F. Mulligan ("Mulligan"), the attorney representing Deon Williams ("Plaintiff") in this action. (ECF 106.)[2]

---

[1] Plaintiff originally sued two defendants: Abraham Benshetrit, D.M.D. and the Saltz Dental Center, which employed Dr. Benshetrit as a dentist during the relevant time period. All parties stipulated to the dismissal of the Saltz Dental Center, (ECF 107), so Dr. Benshetrit is the only remaining defendant in this case.

[2] ECF 106 contains a number of files, including the following: Defendant's proposed form of order ("Def's Prop. Order"), which is set forth at pp.1–2; Defendant's Motion for Sanctions ("Def's Mot.

1

The conduct precipitating Defendant's Motion arises out of orders that the Court entered on January 14, 2020 and January 16, 2020 directing that (1) Mulligan "shall work with Plaintiff to prepare an affidavit for Plaintiff's financial position that reflects his earnings and expenses;" and (2) Defendant would be permitted to take the deposition of Chrystina Mensah, the mother of Plaintiff's three children,[3] subject to certain conditions. (ECF 101.)

Defendant contends that Mulligan has violated these orders by, among other things, failing to produce the affidavit concerning Plaintiff's finances and by "interrupting defense counsel's questioning with improper objections that did not concern privilege, lodging speaking objections, directing [Ms. Mensah] not to answer appropriate questions and, at times, even testifying on [Ms. Mensah's] behalf." (Def's Mot. for Sanctions at 2.) Defendant therefore seeks an order: (1) sanctioning Mulligan in the amount of $2,500; (2) ordering Ms. Mensah to appear for a second deposition; (3) requiring Plaintiff to produce an affidavit reflecting his earnings and expenses as previously ordered; and (4) requiring Plaintiff to produce Ms. Mensah's affidavit. (Def's Prop. Order.) It appears that issues (3) and (4) have been mooted because Mulligan produced Ms. Mensah's affidavit and Plaintiff's declaration concerning his expenses in April 2020.[4] (See ECF 112-12, Ms. Mensah's affidavit; ECF 112-14, Plaintiff's financial declaration.)

---

for Sanctions"), which is set forth at pp.3–5; Defendant's Memorandum of Law in support of the Motion ("Def's Mem."), which is set forth at pp.6–43; the transcript of Ms. Mensah's deposition ("Mensah Dep. Tr."), which is set forth at pp.45–135; and the transcript of Plaintiff's deposition ("Pl. Dep. Tr."), which is set forth at pp.137–162.

[3] Ms. Mensah and Plaintiff no longer live together though they are in regular communication as co-parents. (Mensah Dep. Tr. 21:1–2; 25:21–24.)

[4] Although the dispute regarding Plaintiff's declaration is now moot since it was provided to defense counsel in April and attached to Plaintiff's opposition brief, it is worthwhile to note it took Mulligan *three months* to provide the declaration to defense counsel. The series of events leading to the eventual production of the declaration are illustrative.

## II. Legal Standard

"The decision to impose sanctions for discovery violations and any determination as to what sanctions are appropriate are matters generally entrusted to the discretion of the district court." Bowers v. Nat'l Collegiate Athletic Ass'n, 475 F.3d 524, 538 (3d Cir. 2007). Two provisions of the Federal Rules of Civil Procedure are instructive:[5]

**Rule 30(d)(2)**. This Rule provides that "[t]he court may impose an appropriate sanction— including the reasonable expenses and attorney's fees incurred by any party—on a person who impedes, delays, or frustrates the fair examination of the deponent." The Advisory Committee notes further explain that this provision "authorizes appropriate sanctions not only when a deposition is unreasonably prolonged, but also when an attorney engages in other practices that improperly frustrate the fair examination of the deponent, *such as making improper objections* or giving directions not to answer . . ." (emphasis added). Advisory Committee Note to Rule 30, subdivision (d), paragraph (3) (1993 Amendment).

---

The Court entered its order requiring Mulligan to "work with Plaintiff to prepare an affidavit" concerning Plaintiff's financial position on January 16, 2020. (ECF 101.) On March 11, 2020, nearly two months after the entry of the Court's order, defense counsel emailed Mulligan requesting a copy of the declaration in advance of Ms. Mensah's deposition, which was scheduled to occur on March 13, 2020. (ECF 106 at 187.) In response to defense counsel's email, Mulligan "did not produce the affidavit/declaration and refused to provide a date when [P]laintiff intended to comply with the Court's orders," so defense counsel was forced to proceed to Ms. Mensah's deposition without information about Plaintiff's financial position. (Def's Mem. at 12.) It was not until April 14, 2020—three months after the Court's order—that Mulligan finally produced the declaration. (ECF 113, Reply at 2; see also ECF 112-25.)

[5] In addition to the Federal Rules, 28 U.S.C. § 1927 authorizes the imposition of sanctions. Section 1927 provides that "[a]ny attorney . . . admitted to conduct cases in any court of the United States . . . who so multiplies the proceedings in any case unreasonably and vexatiously may be required by the court to satisfy personally the excess costs, expenses, and attorneys' fees reasonably incurred because of such conduct." Defendant does not seek sanctions under Section 1927.

**Rule 37(b)(2)**. This Rule provides that "[i]f a party . . . fails to obey an order to provide or permit discovery . . . the court where the action is pending may issue further just orders." Fed. R. Civ. P. 37(b)(2)(A). Sanctions under this provision include, at a minimum, an order requiring "the disobedient party, the attorney advising that party, or both to pay the reasonable expenses, including attorney's fees, caused by the failure, unless the failure was substantially justified or other circumstances make an award of expenses unjust." Fed. R. Civ. P. 37(b)(2)(C).

### III.    Parties' Contentions

The Motion for Sanctions cites numerous examples of incidents during the deposition where Mulligan's conduct prevented Defendant from having a fair opportunity to depose Ms. Mensah. (Def's Mem. at 14–21.) Defendant estimates that during Ms. Mensah's one-hour deposition, Mulligan "interrupted and interjected himself . . . approximately 112 times." (Id. at 14.) Mulligan told Ms. Mensah not to answer particular questions without asserting valid grounds for an objection, see, e.g., Mensah Dep. Tr. 28:20–21, 30:12–13, 35:21–24, 36:8–9; directed Ms. Mensah how to answer, see, e.g., id. 56:11–12; 57:1–3; insinuated that defense counsel's motive was to harass, humiliate, or embarrass Ms. Mensah and/or Plaintiff, see, e.g., id. 37:4–5, 37:12–13, 39:8–11, 63:13–14, 65:14–16, 69:17–18, 72:12–13; and unilaterally decided which questions were for a "relevant" purpose and which were not, see, e.g., id. 28:10–13; 28:23–24, 36:15–16, 44:15–17, 69:3–4. Defendant argues that Mulligan's "grossly obstructionist conduct impeded, delayed and contributed to the total frustration of Ms. Mensah's deposition." (Def's Mem. at 26.)

Mulligan responds that from the outset of Ms. Mensah's deposition, "defense counsel was hostile and argumentative and sought only to embarrass Ms. Mensah and . . . Plaintiff." (ECF 112, Opp'n at 18.)

## IV. Discussion

The purpose of a deposition is to explore what the deponent saw, heard, and perceived. The lawyer defending the deposition may object, but the manner and scope of objections is limited:

> An objection at the time of the examination . . . must be noted on the record, *but the examination still proceeds*; the testimony is taken subject to any objection. . . . A person may instruct a deponent not to answer *only when* necessary to preserve a privilege, to enforce a limitation ordered by the court, or to present a motion under Rule 30(d)(3).

Fed. R. Civ. P. 30(c)(2) (emphases added). Mulligan's objections exceeded this scope in at least two ways.

First, when Mulligan objected, he effectively prevented Ms. Mensah from answering defense counsel's questions. Rule 30(c)(2) provides that when an attorney makes an objection, "the examination still proceeds." In other words, the objection is preserved but the witness generally must answer (subject to the objection). See Hopkins v. NewDay Fin., LLC, No. 7-3679, 2008 WL 4657822, at *3 (E.D. Pa. Oct. 17, 2008) (Pollak, J.) ("The attorney representing the deponent may object under Rule 30(c)(2) if he honestly believes the question is not relevant to the issues defined by this court. The examiner then will make a statement summarizing the relevance of the question, *and the deponent is expected to answer*." (emphasis added)). Here, instead of objecting to the question on the record and allowing Ms. Mensah to answer—as required by Rule 30(c)(2)—Mulligan's interjections prohibited Ms. Mensah from responding. Mulligan's repeated instructions to Ms. Mensah not to answer questions departed from Rule 30(c)(2)'s clear instruction that when an objection is made, the examination still generally proceeds.

Second, while Rule 30(c)(2) permits a defending attorney to instruct the deponent not to answer in a limited number of situations, Mulligan's objections did not fall within any of these narrow categories. Rule 30(c)(2) provides that an attorney may instruct the deponent not to answer

5

only when necessary to assert a privilege, enforce a limitation ordered by the court, or present a motion under Rule 30(d)(3). None of these exceptions apply. As to the exception for privilege, Mulligan, who also represents Ms. Mensah,[6] asserted the attorney-client privilege once,[7] but the majority of Mulligan's objections were based on his view of relevancy or his opinion that defense counsel's purpose was to harass Ms. Mensah. As to the exception for restrictions imposed by court order, this Court placed two limitations on Ms. Mensah's deposition: that it take place in Wilmington, Delaware and that it not exceed two hours. (ECF 101.) Mulligan's objections were not designed to enforce either of these court-ordered limitations.

Most of Mulligan's objections and instructions to Ms. Mensah not to answer were premised on his view that the questions were not relevant. However, relevancy is not one of the three grounds enumerated in Rule 30(c)(2) for when a deponent may refuse to answer a question. See Hearst/ABC-Viacom Entm't Servs. v. Goodway Mktg., Inc., 145 F.R.D. 59, 63 (E.D. Pa. 1992) (Naythons, M.J.) ("[T]he fact that a question is repetitive or irrelevant is not an appropriate ground for instructing a witness not to answer a question, since it does not involve a matter of privilege."). In sum, Rule 30(c)(2) provides three narrow exceptions to the general rule that a witness must answer the questions asked at a deposition. Mulligan's objections did not fall within these exceptions and he therefore improperly directed Ms. Mensah not to answer.

---

[6] Defendant expressed concern to Mulligan that Mulligan's simultaneous representation of Plaintiff and Ms. Mensah is improper since Ms. Mensah is a material witness in this case. (ECF 106 at 164–66.) The focus of Defendant's Motion for Sanctions is on Mulligan's conduct during the deposition so this Memorandum does not address the possible ethical conflict implicated by Mulligan's dual representation.

[7] Mulligan asserted the attorney-client privilege when defense counsel asked Ms. Mensah about "conservations she had with [Mulligan] regarding . . . production of documents" related to Plaintiff's lawsuit. (Mensah Dep. Tr. 21:14–16.) Defense counsel confirmed that he "understood" Mulligan's objection and reframed his questions so the privilege was not implicated. (Id. 21:18.)

Awarding sanctions under Rule 30(d)(2) and Rule 37(b)(2) for Mulligan's blatant violation of proper deposition protocol is appropriate to redress the expense and inconvenience that defense counsel incurred in connection with Ms. Mensah's deposition. Courts in this district have ordered monetary sanctions for similarly disruptive conduct. See, e.g., O'Brien v. Amtrak, 163 F.R.D. 232, 236 (E.D. Pa. 1995) (Joyner, J.) (allowing the plaintiff to redepose, at the defendants' expense, various witnesses because defense counsel "improperly objected to many questions and interposed many speaking objections that may have had the effect of affecting the witness's testimony"); Johnson v. Wayne Manor Apartments, 152 F.R.D. 56, 59, 60 (E.D. Pa. 1993) (Joyner, J.) (sanctioning defense counsel in the amount of $1,314.20 because of "numerous instances in which defense counsel improperly 'objected to the form of the question' by either suggesting what he apparently believed to be an appropriate answer . . . or himself testifying").

**V.      Conclusion**

The practice of law is premised on civility and cooperation. This basic precept is embedded in the Federal Rules, see Advisory Committee Note to Rule 1 (2015 Amendment) ("Effective advocacy . . . depends upon . . . cooperative and proportional use of procedure."), and in the ethical rules, see Pa. Rule of Professional Conduct 3.4 (providing rules to ensure fairness to opposing party and counsel). The need for respect and courteousness is especially crucial in the context of depositions, which have become "the factual battleground where the vast majority of litigation actually takes place." Hall v. Clifton Precision, 150 F.R.D. 525, 531 (E.D. Pa. 1993) (Gawthrop, J.) That depositions proceed under the Federal Rules but occur outside the court's purview makes cooperation amongst counsel even more critical. Mulligan's behavior during Ms. Mensah's deposition disregarded the standards set forth in Rule 30 and effectively deprived Defendant of the opportunity to depose Ms. Mensah. Sanctions for his conduct are appropriate.