IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| DEON WILLIAMS | CIVIL ACTION |
|---|---|
| v. | NO. 19-797 |
| ABRAHAM BENSHETRIT, D.M.D. | |

**MEMORANDUM RE: SANCTIONS AGAINST PLAINTIFF'S COUNSEL**

**Baylson, J.**                                                                                                                **June 14, 2021**

### I.  Introduction

In this dental malpractice case.  Plaintiff Deon Williams alleges he suffered a perforated tooth during a root canal procedure by Abraham Benshetrit, DMD.  As a result, Mr. Williams had the affected tooth extracted and now requires an implant and crown.

A prior Opinion found that sanctions were warranted against one of Plaintiff's attorneys, see June 18, 2020 Memorandum (ECF 114).  Defendant seeks $8,543.55 to be paid by Brendan Mulligan, Esq. to the law firm of Marshall Demley Warner Coleman & Goggin.  Defendant asserts that this amount equals the cost of researching and drafting the Motion for Sanctions (ECF 106), deposing Chrystina Mensah, and preparing the instant supplemental brief.  Plaintiff responded in opposition, and Defendant filed a Motion for Leave to file a Sur-Reply, with the proposed brief attached.

### II.  The Court's Previous Order

This Court granted Defendant's previous Motion for Sanctions against Mr. Mulligan for violating two Orders issued in January 2020.   The Court concluded that "Mr. Mulligan's behavior during Ms. Mensah's deposition disregarded the standards set forth in Rule 30 and effectively deprived Defendant of the opportunity to depose Ms. Mensah."  (Id. at 7.)  The Order required (1)

that Ms. Mensah appear for a second deposition; (2) that she answer all questions on certain topics;[1] and (3) that following her second deposition, the Court will determine the amount of sanctions, if any, to be paid by Brendan Mulligan.

### III.  The Pending Motion: Supplemental Brief in Support of Sanctions

Defendant now requests that this Court determine Mr. Mulligan's sanctions to be in the amount of $8,543.55.  (Supp. Br. 1, ECF 122.)  Defendant has provided line item fees based on the time defense counsel spent on expenses as follows:[2]

| Description of Work | Amount |
|---|---|
| *Pertaining to the original Motion for Sanctions (ECF 106):* | |
| • Legal Research concerning applicable federal law (Third Circuit and District Courts) on administration of sanctions against counsel for a party. | $799 |
| • Review of deposition transcripts and documents obtained during discovery in the case to develop the factual predicate for our motions. | $578 |
| • Drafted the Motion for Sanctions and accompanying Memorandum of Law. | $2,465 |
| *After the filing of the original Motion for Sanctions:* | |
| • Review of the Plaintiff's response to the motion for sanctions and annotated areas to address in reply brief. | $102 |
| • Review and analysis of the deposition transcripts taken in the case and dental literature, to obtain facts to respond to plaintiff's position. | $306 |

---

[1] The topics were listed as follows:

> (a) Her employment, amount of work and earnings from November of 2015 through September of 2019, (b) the relationship between Ms. Mensah and Plaintiff, Deon Williams, (c) the support that Chrystina Mensah provided to Deon Williams for their three shared children from November of 2015 through September of 2019, (d) financial support, including amount, that Deon Williams provided to Chrystina Mensah for their three shared children from November of 2015 through September of 2019, (e) Chrystina Mensah's factual knowledge of Mr. Williams' pain medication usage, and (f) any knowledge that Chrystina Mensah has with respect to Deon Williams' dental treatment and dental providers, including conversations that Mr. Williams had with Ms. Mensah.

(Order 1, ECF 115.)

[2] Defendant's brief provides even more detailed descriptions of this work; The "titles" stated above are paraphrased for brevity.  (See Supp. Br. 3–6.)

| | |
|---|---|
| • Drafted the Reply Brief in support of the Motion for Sanctions on behalf of Defendant, Abraham Benshetrit, DMD. | $1,054 |
| *After receiving Judge Baylson's June 2020 Order:* | |
| • Review of Judge Baylson's June 18, 2020 Order and report to Client concerning the impact of Order and plan. | $94 |
| • Correspondence and phone conferences with plaintiff's counsel, Brendan Mulligan re: Judge Baylson's Order, second deposition of Chrystina Mensah, request for production of documents directed to Ms. Mensah, as directed by Judge Baylson, COVID-19 issues to work through for second deposition (conference with Mr. Mulligan and with Golkow court reporters.) | $136 |
| • Prepared for and attended the second deposition of Chrystina Mensah. | $714 |
| • Invoice from Golkow Litigation Services for Ms. Mensah's second deposition. | $255.55 |
| *After Ms. Mensah's Second Deposition:* | |
| • Review and analysis of Chrystina Mensah's second deposition transcript for additional evidence in support of motion for sanctions. | $204 |
| • Research of Eastern District precedent for the amounts of monetary sanctions levied against attorneys for improper conduct during depositions. | $102 |
| • Drafted the supplemental brief in support of defendant, Abraham Benshetrit's request for monetary sanctions. | $1,734 |
| **Grand Total** | **$8,543.55** |

**A. Defendant's Argument**

Defendant contends that had Mr. Mulligan allowed the court-ordered discovery to proceed, that Defendant would not have incurred the above-listed costs. The Court agrees. Mr. Mulligan "repeatedly obstructed defendants' good-faith discovery efforts." (See Supp. Br. 7.) Defendant argues that this District has previously granted monetary sanctions for counsel's violations of proper deposition protocol. (Id. at 7 (citing cases). Defendant adds that, in addition to Fed. R. Civ. P. 30(d)(2) and 37(b)(2), sanctions are also appropriate under 28 U.S.C. § 1927,[3] because Mr. Mulligan unreasonably "multiplied these proceedings" by forcing motions practice over the disputes relating to Ms. Mensah's first deposition. (Id. at 7–8.)

---

[3] "Any attorney or other person admitted to conduct cases in any court of the United States or any Territory thereof who so multiplies the proceedings in any case unreasonably and vexatiously may be required by the court to satisfy personally the excess costs, expenses, and attorneys' fees reasonably incurred because of such conduct." 28 U.S.C. § 1927.

3

Defendant further posits that Ms. Mensah's second deposition revealed additional support for monetary sanctions against Mr. Mulligan. (Id. at 13.) When documents requested from her were scheduled to be produced, Mr. Mulligan emailed defense counsel to say that she had "no documents responsive to defense's requests." (Id. at 9.) At Ms. Mensah's deposition, however, she testified that she herself did not receive the notice of continued deposition and did not perform any additional search for the documents requested, as the June 2020 Order stated.[4] Yet, Defendant has established that upon further examination of Ms. Mensah, it became clear that she did have at least some documents responsive to the defense's requests, including a screen-shot from Mr. Williams. (Id. at 11.)

Even though Ms. Mensah justified her inaction because she did not believe she had any of the requested documents in her possession, Defendant contends this is inapposite, because "she was explicitly directed by the court to perform a search for the requested records and she readily admitted that she did not do so." (Id. at 12.) Accordingly, Defendant contends that Ms. Mensah's failure to perform this search "falls squarely upon" Mr. Mulligan, as "he clearly did not direct his client . . . to comply with this Court's June 18, 2020 order." (Id. at 13). And, by emailing defense counsel that Ms. Mensah did not have any responsive documents, Mr. Mulligan also violated the court order himself. (Id.)

Defense counsel reasonably needed to depose Ms. Mensah because she could testify about the financial contributions Mr. Williams made to support their three children. (Id.) Mr. Mulligan opposed the deposition by filing a motion for a protective order, and arguing that Mr. Williams was fully responsible for his three children. (Id.) In support, Mr. Mulligan cited and attached to

---

[4] "Chrystina Mensah is ordered to reappear for a second deposition. The deponent shall perform a search for all records requested in the notice of deposition and shall produce all materials in her possession." (Order 1, ECF 115.)

4

the motion a purported affidavit of Ms. Mensah. (Id. at 14.) But, defense counsel contends, despite several requests, that affidavit was not provided to Defendant until April 14, 2020, after her original deposition. (Id. at 15.) Through Ms. Mensah's depositions, defense counsel has developed testimony that rebuts Mr. Williams's statements about his final contributions and demonstrates that the purported affidavit was a "sham." (Id. at 14.)

Contrary to Mr. Williams's own deposition testimony, Ms. Mensah testified that although there is no formal agreement between them, she and Mr. Williams have split custody, split the children's expenses, and that she is primarily responsible for taking the children to any medical appointments. (Id. at 14–15, 17.)

At her second deposition, Ms. Mensah also testified that she did not the draft the affidavit or have any involvement with its contents. (Id. at 18.) Rather, Mr. Williams gave her a paper (the affidavit), which she signed, but not in the presence of the notary, whom she never met. (Id. at 15–16, 18.) She also testified that she had never been to Mr. Mulligan's law office. (Id. at 18.) Defendant contends that "[t]his is the exact type of scenario [that] the process for obtaining an affidavit through a notary public is designed to present," and another reason why monetary sanctions are appropriate in this case. (Id. at 19.)

**B. Plaintiff's Response in Opposition**

Plaintiff calls defense counsel's motion seeking monetary damages "meritless," and says it should be denied due to the January 14, 2020 Discovery Dispute Order.[5] (Resp. in Opp'n 3, ECF 128.)

---

[5] "If any discovery is taken by either party that is disputed and turns out to be meritless, the Court will consider a motion for expenses or other sanctions." (Order 1, ECF 99.)

5

Plaintiff dedicates several introductory pages of his brief discussing Ms. Mensah's instability, and how Mr. Williams is the main caretaker to his children. (Id. at 5–8.)

Plaintiff then makes two main arguments: (1) that the June 2020 Court Order was not violated, and (2) that Ms. Mensah's deposition was meritless.

On the first point, Plaintiff emphasizes that Ms. Mensah and Plaintiff ended their relationship nearly two years before the incident that is the subject of Plaintiff's Complaint. (Id. at 8.) They now have limited contact, only as needed regarding logistics for their children. (Id. at 9.) Accordingly, it "comes as no surprise" that she has no records responsive to Defendant's notice of deposition. (Id. at 8.) Plaintiff's counsel writes that he "requested that Ms. Mensah provide responsive documents, and was advised and assured by Ms. Mensah that there was none." (Id. at 11.) Plaintiff contends that testimony at both Ms. Mensah's first and second deposition reflects the fact that she had no responsive documents.[6]

Plaintiff accuses defense counsel of misleading the Court when discussing the "screen shot" sent by Mr. Williams to Ms. Mensah. (See Pl.'s Supp. Br. 11.) Plaintiff states that the defense tries to paint the screen shot as a "smoking gun" indicative of unresponsive documents,

---

[6] Plaintiff provides, among others, the following quotations from Ms. Mensah's first and second depositions:
> "Q: So did you look through your text messages to see if [Plaintiff] ever talked about [this lawsuit] to you?
> A: No, because we don't text that often. It's like when I see him or picking up the kids, dropping them off or he'll call briefly . . . we'll call each other briefly like that."

(Ex. F, 25:18–26, ECF 128-7.) Note that several pages are missing from the deposition testimony that Mr. Mulligan attached to his brief.
> "Q: [D]id you go back and look prior to this deposition to see if you had any journals, logs, notes, calendars, or correspondence from the time of 2018 to present relating to this case?
> A: No, not the second time. I looked for all this for the first deposition and then I couldn't find nothing, so I didn't re – I didn't re-look for any – any of this because there was nothing to find."

(Ex. I, 103–111, ECF 128-10). Again, it looks like these pages are missing from the exhibit Mr. Mulligan cites to.

when in reality, Ms. Mensah testified that it was a limited and one-time text message. Plaintiff further accuses defense counsel of using Ms. Mensah to attempt a character assassination of Mr. Williams. (Resp. in Opp'n 15.)

Notably, Plaintiff makes no legal argument as to why Ms. Mensah's admitted failure to conduct another search was not in violation of this Court's prior Order.

Regarding Plaintiff's second argument, Plaintiff contends that the depositions of Ms. Mensah were completely meritless. (Id.) Specifically, he argues that Mr. Williams's financial condition is not relevant to whether the Defendant deviated from the acceptable standard of care or that Mr. Williams failed to mitigate damages. (Id.)

Plaintiff also pushes back against Defendant labelling Ms. Mensah's affidavit as a "sham," stating that all of the statements therein were obtained after speaking with Ms. Mensah directly, that Ms. Mensah signed it and testified to signing it, and that it was signed under her own free will. (Id. at 16.) Plaintiff cites 28 U.S.C. § 1746 for the proposition that there is no requirement the affidavit be notarized, so Defendant's argument that Ms. Mensah was not present before Ms. Schwartz is inapposite. (Id.)

Plaintiff then goes on to quote several parts of Ms. Mensah's deposition to rebut Defendant's argument "that Ms. Mensah's statements, specifically numbers 7–10[7] in her affidavit[,] seem to contradict her deposition testimony, and that this justified taking her deposition." (Id. at 18.). Plaintiff does not genuinely dispute the reasonableness of the amount of time spent or the hourly rate.

### C. Defendant's Motion for Leave to File a Sur-Reply

---

[7] The topics cited have to do with which parent has custody over the children, and how responsibilities and expenses are split/shared between Ms. Mensah and Plaintiff.

The Court will grant this Motion and consider the sur-reply in making a decision on the amount of sanctions.

As a threshold matter, Defendant emphasizes that Plaintiff's counsel does not address the conduct at Ms. Mensah's deposition for which he was sanctioned by the Court—he does not offer an apology nor take responsibility. (Mot. for Leave to File a Sur-Reply 6–7, ECF 129). Instead, Defendant states that Plaintiff's counsel attempts to justify his conduct by making an argument which was previously rejected: that discovery conducted by Defendant is not relevant to Plaintiff's claims for liability, causation and damages. (Id. at 7.)

First, Defendant notes that "discovery taken by defendant . . . was court-ordered, subpoenaed by parties other than Dr. Benshetrit, and used to evaluated the plaintiff's claims for liability, causation, and damages." (Id. at 7.) Accordingly, Plaintiff's claim that defense counsel has engaged in "scorched in discovery" is baseless. In response to Plaintiff's issue with the third-party subpoenas, Defendant also reminds the Court of its previous statement that "[t]he use of subpoenas for third-party providers is customary in a professional malpractice case and is not burdensome." (See Order 1, ECF 74.) And, Defendant cites to the fact that Dr. Benshetrit was not the only Defendant at the outset of the case—eleven of the subpoenas Plaintiff attributes to Defendant were issued by now-dismissed-Defendant Saltz Dental Center's counsel. (Id. at 8.)

Next, Defendant argues that the Court has already determined that Chrystina Mensah was a relevant fact witness and entered multiple orders allowing her deposition. (Id. at 8.) Specifically, Defendant states counsel was justified in seeking to rebut—via Ms. Mensah—Plaintiff's testimony that he could not afford the dental treatment recommended by his providers and which is directly at issue in the alleged malpractice case. (Id. at 9.) Ms. Mensah's deposition was necessary to establish that she also contributes to the financial needs of her children. (Id.) Defendant further

8

notes that Plaintiff, for the first time, cites to a December 8, 2017 custody order to support his argument. (Id. at 5.) Defendant argues that after a year of discovery on these topics, Plaintiff finally produced this Order in October 2020, three months *after* Ms. Mensah's second deposition. Defendant calls this "obstructionist . . . and dilatory" conduct. (Id. at 11.)

Third, Defendant states that this Court has already determined that sanctions upon Mr. Mulligan were appropriate. (Id. at 7.) Accordingly, Plaintiff's supplemental brief focused on legal fees and expenses incurred due to Mr. Mulligan's sanctionable conduct, yet Mr. Mulligan's response in opposition does not challenge the reasonableness of the sanctions or offer any explanation to his conduct. (Id. at 8–9.) Rather, counsel only made a "passing reference" to his conduct, and attempted to deflect blame from himself.[8] Defendant argues that plaintiff's counsel's failure to acknowledge his "blatant violation" of the Federal Rules of Civil Procedure, the Pennsylvania Rules of Professional Conduct, the case law governing conduct at depositions, and the two previous orders of this Court, is evidence that monetary sanctions are appropriate. (Id. at 9.)

## IV.  Conclusion

Monetary sanctions will be awarded as reasonable and necessary. First, the June 2020 Order clearly instructed that Ms. Mensah conduct another document search in advance of her second deposition. (Order at 1, ECF 115). She did not do so, basically because of the conduct of

---

[8] Defendant cites the closing paragraph of Plaintiff's Response:

> "Granted, Plaintiff counsel's conduct during Chyrstina Mensah's first deposition was not counsel's finest hour, but borne out of the frustration in having to engage in costly and time-consuming discovery that has been absolutely show [sic] in detail to above to be meritless."

(See Pl.'s Resp. in Opp'n 22).

9

Mr. Mulligan. Mr. Mulligan admits that Ms. Mensah did not obey this directive but attempts to disclaim his responsibility.

Second, as Defendant points out, Plaintiff does not focus his briefs on the actual issue before the court: what monetary sanctions are reasonable and appropriate?

In its discretion the Court agrees to award monetary sanctions. See Bowers v. Nat'l Collegiate Athletic Ass'n, 475 F.3d 524, 538 (3d Cir. 2007) ("The decision to impose sanctions for discovery violations and any determination as to what sanctions are appropriate as matters generally entrusted to the discretion of the district court.").

Judges in this district have awarded monetary sanctions when counsel acts improperly at a deposition and further deposition is needed to remedy the discovery process. See, e.g., O'Brien v. Amtrak, 163 F.R.D. 232, 236 (E.D. Pa. 1995) ("The costs of [second] depositions will be borne by Defendants, because it is their counsel's conduct that necessitates them."); Gen. Ins. Co. of Am. v. E. Consol. Utils., Inc., No. 94-4388, 1997 WL 700551, *3 (E.D. Pa. Oct. 27, 1997) (Van Antwerpen, J.) (imposing monetary sanctions where attorney ignored court orders and hindered opponent's attempts to conduct discovery);  See Court's prior decision, see Clientron Corp. v. Devon IT, Inc., 310 F.R.D. 262, 271 (E.D. Pa. 2015) (Baylson, J.) ("The Court can and will impose a monetary sanction of $44,320.50 because of the extra costs imposed upon Plaintiff which Plaintiff has detailed in its moving papers.").

O:\CIVIL 19\19-797 Williams v Benshetrit\19cv797 Memo Re Sanctions.docx