IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| **DEON WILLIAMS,**<br>*Plaintiff*,<br><br>v.<br><br>**ABRAHAM BENSHETRIT, D.M.D.,**<br>*Defendant*. | **CIVIL ACTION NO. 19-cv-00797** |

**MEMORADUM RE: PLAINTIFF'S DAUBERT MOTION IN
PLAINTIFF'S MOTION IN LIMINE**

**Baylson, J.**                                                                                       **December 17, 2021**

### I.      INTRODUCTION

On July 23, 2021, Plaintiff filed this Motion *in Limine* (the "Motion" or "Plaintiff's Motion"). ECF No. 154.  On August 13, 2021, Defendant filed his opposition to Plaintiff's Motion ("Def. Resp."). ECF No. 158.  Plaintiff did not file a Reply to Defendant's Response.  For the foregoing reasons, Plaintiff's arguments to exclude portions of Drs. Fonseca and Kunz's testimony pursuant to FED. R. EVID. 702, embedded in his Motion in Limine, are **DENIED**.

### II.     RELEVANT FACTUAL ALLEGATIONS

Plaintiff Brian Williams ("Plaintiff" or "Mr. Williams") received dental care from Defendant Abraham Benshetrit ("Defendant" or "Dr. Benshetrit") of the Saltz Dental Center in February 2018.  Am. Compl. ¶ 12.  Mr. Williams initiated this action against Dr. Benshetrit alleging Dr. Benshetrit deviated from an acceptable standard of dental care—specifically that Dr. Benshetrit performed root canal and tooth extraction procedures negligently—and made false representations to Mr. Williams about his licensure status and experience.  See generally Am. Compl.

1

On November 23, 2015 Plaintiff's tooth number 18 was decayed such that a root canal procedure was recommended by Saltz Dental Center. Def. Resp. at 1. Plaintiff returned to have this procedure done in February 2018. Def. Resp. at 1. Defendant examined Plaintiff's tooth number 18 and determined either a root canal procedure or tooth extraction were appropriate courses of treatment to treat the tooth's decay. Def. Resp. at 1. With Plaintiff's apparent consent, Defendant attempted to numb Plaintiff, but was unable to do so successfully. Def. Resp. at 2. Defendant prescribed Plaintiff amoxicillin and requested he return the following week to resume the root canal procedure. Am. Compl. ¶ 18. Upon Plaintiff's return, Defendant successfully numbed Plaintiff and commenced the root canal procedure. Def. Resp. at 2. During the procedure, Defendant determined tooth number 18's decay had progressed into the furcation of the tooth and was too advanced to be remedied by a root canal. Def. Resp. at 2. So, Defendant informed Plaintiff that an extraction of tooth number 18 would be the best course of treatment. Def. Resp. at 2. With Plaintiff's consent, Defendant began to perform the tooth extraction. Def. Resp. at 2. Defendant sectioned tooth number 18 but was unable to entirely remove it. Def. Resp. at 2. Then Defendant recommended Plaintiff see an oral surgeon to remove the remainder the tooth. Def. Resp. at 2. Eighteen months later in September 2019, Plaintiff went to an oral surgeon, and tooth number 18 was finally extracted. Def. Resp. at 3.

### III. PARTIES' CONTENTIONS

#### A. Plaintiff's Contentions

Although it is not presented in a separate Daubert motion, at the end of Plaintiff's Motion in Limine, Plaintiff moves to preclude portions of the defense experts', Dr. Raymond J. Fonseca and Dr. Brian S. Kunz, testimonies pursuant to FED. R. EVID. 702. Pl. Mot. at 29–30, 31–33. Specifically, Plaintiff moves to preclude Drs. Fonseca and Kunz from testifying to their opinions

that chronic Percocet use can inhibit the efficacy of local dental anesthetics. Pl. Mot. at 29–30, 31–33. Plaintiff argues FRE 702 warrants exclusion of these opinions because

(i) a correlation between Percocet use and dental anesthesia is "not based on reliable scientific methodology or fit" (Pl. Mot. at 27);

(ii) the defense experts' opinions are "without scientific fact or data," (Pl. Mot. at 29, 32);

(iii) the "reliability and fit" standards under <u>Daubert v. Merrell Dow Pharmaceuticals</u>, 509 U.S. 579 (1993) are not met because "there is no scientific evidence or research" supporting a connection between Percocet use and diminished efficacy of local anesthetics (Pl. Mot. at 30, 32); and

(iv) Drs. Fonseca and Kunz are not qualified to serve as experts "in the area of pharmacology and drug interactions." Pl. Mot. at 30, 32.

**B.  Defendant's Contentions**

Defendant argues Drs. Fonseca and Kunz should be permitted to testify to their opinions that Percocet use can inhibit the efficacy of local dental anesthetics because

(i) this Court already ruled no <u>Daubert</u> motions would be filed[1] (Def. Resp. at 34);

(ii) Plaintiff's <u>Daubert</u> motion is untimely (Def. Resp. at 34–35);

(iii) and Drs. Fonseca and Kunz's opinions are based on a scientific correlation that Plaintiff's own expert, Dr. Tedeschi, recognizes and agrees with. Def. Resp. at 35–36.

---

[1] Defendant argues this Court already ruled no <u>Daubert</u> motions would be filed, so the law-of-the-case doctrine precludes granting Plaintiff's Motion. Def. Resp. at 34. On April 29, 2021 this Court ordered no <u>Daubert</u> motions would be filed because the parties each represented that neither intended to file any <u>Daubert</u> motions in this case. Def. Resp. at 34. As such, Defendant argues Plaintiff cannot now convert his Motion *in Limine* to a <u>Daubert</u> motion. Def. Resp. at 34.

### 1. *Plaintiff's Daubert Arguments are Untimely*

Defendant argues Plaintiff's <u>Daubert</u> arguments are untimely because Section C(3) of Judge Baylson's Pretrial and Trial Procedures provides all motions related to expert testimony "should be made promptly after the close of discovery, and in any event, prior to the filing of dispositive Motions, or if none, prior to entry of the case into the trial pool." Def. Resp. at 34–35. Defendant contends this Court ordered discovery as to close by May 7, 2021 (ECF No. 141) and dispositive motions to be filed by June 30, 2021. Def. Resp. at 34–35 (citing EFC No. 141.). Therefore, Defendant argues Plaintiff's <u>Daubert</u> arguments are untimely because they were filed on July 23, 2021, after the close of discovery, after the dispositive motion deadline, and eleven months after Plaintiff was served with Drs. Fonseca and Kunz's expert reports. Def. Resp. at 35 (citing ECF No. 117).

### 2. *Plaintiff's Expert Admits Research Shows a Negative Correlation Between Percocet Use and the Efficacy of Local Dental Anesthetics*

Defendant argues Drs. Fonseca and Kunz may testify to the impact Percocet usage has on the efficacy of local dental anesthetics because Plaintiff's expert, Dr. Tedeschi, admitted "his own research provided that . . . if someone is a chronic opioid user, it will affect the timing and overall ability to become numb from lidocaine." Def. Resp. at 36 (citing relevant portions of Dr. Tedeschi's deposition transcript). Therefore, Defendant concludes that because *all* experts in this case agree Percocet usage can inhibit a patient's ability to be adequately numbed before a procedure, Drs. Fonseca and Kunz must be permitted to testify to this correlation to counter Plaintiff's case-in-chief. Def. Resp. at 36. Defendant also argues the Journal of Anesthesiology confirmed the existence of this correlation. Def. Resp. at 36. Dr. Tedeschi reviewed the articles Drs. Fonseca and Kunz relied on to form their opinions, and Dr. Tedeschi agreed with the articles' legitimacy and findings. Def. Resp. at 36. And this correlation underpins Defendant's entire

4

defense—that Defendant was unable to sufficiently numb Plaintiff not because of Defendant's own negligence, but because Plaintiff did not disclose his Percocet use to Defendant. Def. Resp. at 36. Defendant argues he should be permitted to offer Drs. Fonseca and Kunz's opinions as rebuttal evidence if Dr. Tedeschi testifies that Dr. Benshetrit acted negligently when he failed to sufficiently numb Plaintiff. Def. Resp. at 36.

## IV.  LEGAL STANDARD

The admissibility of expert testimony is governed by Federal Rule of Evidence 702, which provides:

> A witness who is qualified as an expert by knowledge, skill, experience, training, or education may testify in the form of an opinion or otherwise if:
>
> (a) the expert's scientific, technical, or other specialized knowledge will help the trier of fact to understand the evidence or to determine a fact in issue;
>
> (b) the testimony is based on sufficient facts or data;
>
> (c) the testimony is the product of reliable principle and methods; and
>
> (d) the expert has reliably applied the principles and methods to the facts of the case.

Under Rule 702, a district court judge functions as a gatekeeper to "ensure that any and all scientific testimony or evidence admitted is not only relevant, but reliable." Daubert, 509 U.S. at 589. The Third Circuit clarified that "in doubtful cases," Rule 702 "favor[s] admissibility." Linkstrom v. Golden T. Farms, 883 F.2d 269, 270 (3d Cir. 1989); see also Kannankeril v. Terminix Int'l, Inc., 128 F.3d 802, 806 (3d Cir. 1997) ("Rule 702 . . . has a liberal policy of admissibility."). The "touchstone" for Rule 702 analysis is the broad helpfulness of the expert's testimony to the trier of fact. Linkstrom, 883 F.2d at 270.

Rule 702 imposes three requirements for admissibility of expert testimony: "(A) the proffered witness must be an expert, i.e. must be qualified; (B) the expert must testify about matters requiring scientific, technical or specialized knowledge; and (C) the expert's testimony must assist the trier of fact." Pineda v. Ford Motor Co., 520 F.3d 237, 244 (3d Cir. 2008).

### A.     Qualification

To qualify as an expert under Rule 702, a witness must offer "specialized expertise or experience." In re Domestic Drywall Antitrust Litig., 2020 WL 1695434, at *15 (E.D. Pa. Apr. 7, 2020). The Third Circuit defines the qualification requirement "liberally," allowing "a broad range of knowledge, skills, and training [to] qualify an expert." Schneider ex rel. Estate of Schneider v. Fried, 320 F.3d 396, 404 (3d Cir. 2003). The liberal policy in favor of admissibility "extends to the substantive as well as the formal qualifications of experts." Pineda, 520 F.3d at 244. A district court abuses its discretion if it "exclude[s] testimony simply because [it] does not deem the proposed expert to be the best qualified or because the proposed expert does not have the specialization that the court considers most appropriate." Holbrook v. Lykes Bros. S.S. Co., Inc., 80 F.3d 777, 782 (3d Cir. 1996). The result of the Third Circuit's liberal approach to admitting expert testimony under Rule 702 is that arguments regarding an expert's qualifications generally relate to the weight to be given to the testimony—not to its admissibility. Id.

### B.     Reliability

For the testimony of a qualified witness to be admissible under Rule 702, the witness must also use a methodology or technique that is reliable. Domestic Drywall, 2020 WL 1695434 at *15 (citing In re Paoli R.R. Yard PCB Litig., 35 F.3d 717, 742 (3d Cir. 1994)). The test for reliability "is not whether a particular scientific opinion has the best foundation, or even whether the foundation is supported by the best methodology or unassailable research. Instead, the court looks

6

to whether the expert's testimony is supported by 'good grounds.'" Karlo v. Pittsburgh Glass Works, LLC, 849 F.3d 61, 81 (3d Cir. 2017); Domestic Drywall, 2020 WL 1695434, at *15 ("The court's focus in assessing reliability must be solely on principles and methodology, not on the conclusions that they generate.") (internal quotations omitted)). The standard for reliability is "not that high" and is lower than the "merits standard of correctness." Karlo, 849 F.3d at 81.

The Third Circuit identified eight factors relevant to ascertain whether "good grounds" support potential expert testimony:

> (1) whether a method consists of a testable hypothesis; (2) whether the method has been subject to peer review; (3) the known or potential rate of error; (4) the existence and maintenance of standards controlling the technique's operation; (5) whether the method is generally accepted; (6) the relationship of the technique to methods which have been established to be reliable; (7) the qualifications of the expert witness testifying based on the methodology; and (8) the non-judicial uses to which the method has been put.

Paoli, 35 F.3d at 742 n.8. These factors are not exhaustive and may not apply in every case. Domestic Drywall, 2020 WL 1695434, at *15.

### C. Fit

Rule 702 also requires the proposed testimony "fit the facts and the context of the case in which it is offered." Id. at *16. "An expert's testimony fits the case if the testimony will assist the trial of fact." Id. (citing Paoli, 35 F.3d at 743). The standard for fit is the same standard as the one for reliability; it is "not that high." Paoli, 35 F.3d at 745. "Fit" is met when the proposed scientific knowledge is connected to a question at issue. Id. at 745 n.13; see also Daubert, 509 U.S. at 591 ("Expert testimony which does not relate to any issue in the case is not relevant and ergo, non-helpful [to the factfinder].").

V.      **DISCUSSION**

        A.      **Drs. Fonseca and Kunz are Qualified to Offer Opinion Testimony of Percocet Use's Impact on Local Dental Anesthetics**

Plaintiff seeks to preclude Drs. Fonseca and Kunz's from testifying to their opinion, that Percocet use inhibits the efficacy of local dental anesthetics, under the first prong of FRE 702 analysis because, he argues, Drs. Fonseca and Kunz lack "the qualifications to serve as [] expert[s] in the area of pharmacology and drug interactions." Pl. Mot. at 30, 32. Plaintiff argues Drs. Fonseca and Kunz are unqualified because nothing in either doctor's curriculum vitae indicates either "has extremely broad experience in pharmacology", neither wrote "extensively in the field on this specific topic", and neither "consulted with research[] or organization[s] actively investigating" the negative impact Percocet use has on dental anesthetic efficacy. Pl. Mot. at 30, 32. Defendant did not respond to the merits of Plaintiff's qualification argument.[2] See Def. Resp. at 34–36.

Plaintiff's argument does not provide a proper basis to disqualify Drs. Fonseca and Kunz because Daubert and Rule 702 do not require "extremely broad experience" and "extensive writings" in an area to satisfy the qualification prong. To the contrary, Daubert permits "a broad range of knowledge, skills, and training to qualify as an expert." Domestic Drywall, 2020 WL 1695434, at *15. Therefore, Drs. Fonseca and Kunz need not be pharmacologists to testify to their opinion that chronic Percocet use can negatively impact the efficacy of local dental anesthetics.[3]

---

[2] Defendant's only response to Plaintiff's qualification argument is that Plaintiff's argument violates the law-of-the-case principle and is untimely pursuant to this Court's Pretrial and Trial Procedures. Def Resp. at 33–35.

[3] Hammond v. Int'l Harvester Co., 691 F.2d 646, 652–53 (3d Cir.1982) (holding an engineer whose only qualifications were automotive and agricultural equipment sales and teaching high school automobile repair could testify in products liability action involving tractors); Knight v. Otis Elevator Co., 596 F.2d 84, 87–88 (3d Cir.1979) (holding an expert was qualified to testify that

Plaintiff's remaining qualification argument—that Drs. Fonseca and Kunz did not consult research investigating the correlation between Percocet use and anesthetic efficacy—is unsupported by the factual record. Plaintiff never deposed Dr. Fonseca nor Dr. Kunz to ascertain their respective engagement with research on this topic (Def. Resp. at 35) so, Plaintiff's argument they did not engage with research on this topic is premature and unsupported by the factual record. The fact that neither doctors' curriculum vitae lists engagement with research on Percocet use's impact on local dental anesthesia's efficacy is unpersuasive because the purpose of a curriculum vitae is not to identify every single subspeciality in one's professional field that he or she has researched, studied, or reviewed. One's curriculum vitae is meant to itemize the highlights of one's career.

Accordingly, this Court applies the Third Circuit's liberal definition of the qualification requirement to Drs. Fonseca and Kunz. See Schneider, 320 F.3d at 404. Drs. Fonseca have "knowledge, skills, and training to qualify" as experts on the correlation between Percocet use and a dental anesthetic's efficacy because both doctors were formally trained in dental school to perform dental procedures which require the administration of local dental anesthetics (Def. Resp. at Exs. 5, 8); both have been licensed to practice dentistry for several decades (Def. Resp. at Exs. 5, 8), and both "regularly administer local anesthesia in their own [dental] practice[s]." Def. Resp. at 32. Because Drs. Fonseca and Kunz regularly administer local dental anesthetics such as the one Defendant administered on Plaintiff here, they are qualified to testify to their opinion that Percocet use can inhibit the efficacy of said anesthetic.[4]

---

unguarded elevator buttons constituted a design defect even though expert lacked a background in elevator design and manufacturing).

[4] In re Fosamax Products Liab. Litig., 688 F. Supp. 2d 259, 266–68 (S.D. NY. 2010) (a proposed expert who practiced dentistry for over thirty years, specialized in oral-facial pain and

### B. Drs. Fonseca and Kunz's Opinion Testimony of Percocet's Impact on Local Dental Anesthetics Satisfies Reliability and Fit Standards

Plaintiff also challenges Drs. Fonseca and Kunz's opinions under the second and third prongs of Rule 702 admissibility, reliability and fit, for one reason: Plaintiff argues Drs. Fonseca and Kunz's opinions that Percocet use negatively impacts the efficacy of local dental anesthetics are not supported by scientific evidence or research. Pl. Mot. at 29–30, 31–33. Plaintiff's argument is defeated by the deposition testimony of Plaintiff's own expert witness, Dr. Tedeschi.

### 1. *Reliability*

Plaintiff argues Drs. Fonseca and Kunz's opinions that Percocet use can inhibit the efficacy of local dental anesthetics does not satisfy Rule 702 reliability because "there is no scientific evidence or research from [certain dental associations] to support" them.[5] Pl. Mot. at 30, 32. This argument is defeated by Plaintiff's own expert who testified during his depositions that Drs. Fonseca and Kunz's opinions have been researched. On October 30, 2020 Dr. Tedeschi testified that an article in the Journal of Emergencies, Trauma and Shock,

> describe[ed] the effects of local lidocaine in opioid abusers. . . . [t]he ending result say why the patient can't get numb if someone's taking a chronic opium or an OxyContin, oxy codeine for a number of four to five years, what is the effect of lidocaine on that. . . . The ultimate conclusion is it may take a little bit longer onset, but the patient should be able to get numb. The onset of – efficacy of the lidocaine,

---

maxillofacial radiology, kept up to date on research developments regarding condition (ONJ), and who treated "many patients" he believed contracted a condition from a drug (Fosamax), was qualified to testify that the drug caused Plaintiff's injury).

[5] To the extent Plaintiff argues Drs. Fonseca and Kunz's opinions are unsupported, conclusory, and the like, "this argument goes to the credibility of [Drs. Fonseca and Kunz's] testimony and may be elicited through cross-examination." Blue Cross Blue Shield Ass'n v. GlaxoSmithKline LLC, 2019 WL 4751883, at *8 (E.D. Pa. Sept. 30, 2019); see also Stecyk v. Bell Helicopter Textron, Inc., 295 F.3d 408, 414 (3d Cir. 2002) ("[T]he burden of exploring the facts and assumptions underlying the testimony of an expert witness [is placed] on opposing counsel during cross-examination.").

it takes a little bit longer in someone using an opioid or it may take an additional amount of Novocaine to be given at that time.

Def. Resp. Ex. 4 (Dr. Tedeschi Oct. 10, 2020 Deposition Transcript) at 12:4-13:15.  Dr. Tedeschi also testified that he performed his own research on this correlation.  He testified,

| | |
|---|---|
| Defense counsel: | Did you do any further research on your own? |
| Dr. Tedeschi: | I absolutely did. |
| Defense counsel: | Okay.  What did you do? |
| Dr. Tedeschi: | I also looked at the efficacy of dental anesthesia in opioid users and also reconfirmed the same article of use of local anesthetics in inflamed areas. |
| Defense counsel: | What articles did you look at? |
| Dr. Tedeschi: | Okay.  The most recent article is in the Journal of Anesthesiology, Volume 125, Issue 4, October 2016. |
| Defense counsel: | And what did you learn from that article? |
| Dr. Tedeschi: | They're stating the same thing.  It may take a bit longer onset.  You may have to give a little bit more Novocaine, but anesthesia is – is definitely possible and done. |

Def. Resp. Ex 4 at 15:15–16:18.  On May 7, 2021 Dr. Tedeschi testified,

| | |
|---|---|
| Defense counsel: | Are you aware that with patients who have chronic opiate usage that it takes a longer time to get the patient numb? |
| Dr. Tedeschi: | That could be true. |
| Defense counsel: | And why? |
| Dr. Tedeschi: | There's a reaction of the opioids with – specifically with lidocaine. |
| Defense counsel: | What's the reaction? |
| Dr. Tedeschi: | It takes more lidocaine to get the patient numb in some |

> instances. There's a chemic reaction—I don't know what the reaction is—that binds to the receptor site, and it takes longer for the patient to get numb and may require additional lidocaine. All the studies I read were on lidocaine only. Nothing on Septocaine.
>
> The only thing that you can – in the literature is the opioids do affect conscious sedation. It takes longer to get the patient sedated consciously, not with local anesthetics.

Def. Resp. Ex 4 at 341:13–342:7.

Reliability is satisfied when an expert's knowledge is grounded in scientific methods and procedures, not in his subjective belief or an unsupported opinion. Paoli, 35 F.3d at 742. Drs. Fonseca and Kunz's opinions that Percocet use inhibit the efficacy of a local dental anesthetic such as the one Defendant used on Plaintiff (lidocaine) is reliable because it not the product of the doctors' subjective belief or opinion. Instead, the drug interaction they intend to testify to can be scientifically tested, has been subjected to peer review, and Dr. Tedeschi himself testified that the interaction has been published in medical journals[6] such as the Journal of Emergencies, Trauma and Shock and the Journal of Anesthesiology both contained articles on this subject. Therefore, "good grounds" support Drs. Fonseca and Kunz's opinions and these grounds surpass the "not high" standard for reliability.

### 2. *Fit*

Plaintiff makes the same argument against fit that he does against reliability: he argues Drs. Fonseca and Kunz's opinions, that Percocet use can inhibit the efficacy of local dental anesthetics, lack "scientific evidence or research from [certain dental associations] [for] support." Pl. Mot. at 29–30, 31–33. A general "lack of scientific evidence" does not defeat fit because fit does not

---

[6] In re Diet Drugs Products Liab. Litig., 890 F. Supp. 2d 552, 562 (E.D. Pa. 2012) ("[C]ase studies can help establish that an expert's opinion is reliable.") (citing Wolfe v. McNeil-PPC, Inc., et al., 2011 WL 1673805, at *5 (E.D. Pa. May 4, 2011)).

concern the methodology behind the proposed testimony. Fit concerns the helpfulness of the proposed testimony to deciding the pertinent inquiry. Paoli, 35 F.3d at 743. Fit is satisfied if the proposed testimony will help "the trier of fact understand the evidence or [] determine a fact in issue. This condition goes primarily to relevance." Karlo, 849 F.3d at 81.

Whether Percocet use inhibits the efficacy of a local dental anesthetic is directly relevant to the issues in this case. Plaintiff asserts it was *Defendant's* negligence that precluded Plaintiff from becoming sufficiently numbed by the lidocaine Defendant administered. Defendant's defense to Plaintiff's negligence claim is that it was *Plaintiff's* comparative negligence—in the form of his failure to notify Defendant he was a chronic, prescribed Percocet user—that precluded Plaintiff from becoming sufficiently numb, not Defendant's alleged negligence. Therefore, Drs. Fonseca and Kunz's opinions that Percocet use can inhibit the efficacy of local dental anesthetics (such as lidocaine) can assist the jury determine the ultimate issue in this case: liability. Accordingly, the fit requirement for Rule 702 admissibility is met.

## VI.   CONCLUSION

For the reasons set forth above, Plaintiff's arguments to exclude Drs. Fonseca and Kunz's expert testimony pursuant to FED. R. EVID. 702, contained in Plaintiff's Motion *in Limine*, are **DENIED**. An appropriate Order follows.

O:\CIVIL 19\19-797 Williams v Benshetrit\19cv797 Memo re plaintiffs daubert motion in plaintiff's motion in limine.docx