IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| **DEON WILLIAMS,** *Plaintiff*, v. **ABRAHAM BENSHETRIT, D.M.D.,** *Defendant*. | **CIVIL ACTION NO. 19-cv-00797** |

MEMORADUM RE: PLAINTIFF'S AND DEFENDANT'S RESPECTIVE
MOTIONS IN LIMINE

**Baylson, J.**                                                                                                              **January 13, 2022**

### I.   INTRODUCTION

Pursuant to the Court's April 29, 2021 Pretrial Order (ECF No. 141), Defendant filed his Motion *in Limine* ("Defendant's Motion") on July 23, 2021. ECF No. 153. Plaintiff filed his opposition to Defendant's Motion ("Pl. Resp.") on August 13, 2021. ECF No. 156. Defendant did not file a Reply to Plaintiff's Response. ECF No. 141.

Pursuant to the Court's April 29, 2021 Pretrial Order (ECF No. 141), Plaintiff also filed his Motion *in Limine* ("Plaintiff's Motion") on July 23, 2021. ECF No. 154. Defendant filed his opposition to Plaintiff's Motion ("Def. Resp.") on August 13, 2021. ECF No. 158. Plaintiff did not file a Reply to Defendant's Response. ECF No. 141.

Pursuant to the Court's November 3, 2021 Pretrial Order (ECF No. 174) permitting the parties to file supplemental briefing on the scope of Dr. Damon Cary's trial testimony, Plaintiff filed his Supplemental Motion *in Limine* Regarding Damon Cary, DO ("Pl. Supp. Mot.") on November 8, 2021. ECF No. 174. Defendant also filed a Supplemental Brief in Support of Admissibility of Testimony of Damon Cary, D.O. ("Def. Supp. Mot.") on November 8, 2021. ECF No. 175. Neither party filed responsive briefing.

1

## II.   PROCEDURAL HISTORY

This Court already ruled on some items contained in the parties' respective motions *in limine* in its November 23, 2021 Order and December 17, 2021 Orders. ECF Nos. 177, 190. In its November 23rd Order, this Court held under advisement the remaining items identified in the motions *in limine*, including:

1. Testimony of Dr. Damon Cary, DO related to Mr. Williams' "good character" (ECF No. 153);

2. Exhibits, testimony and/or argument related to Mr. Williams' dental insurance (ECF No. 153);

3. Exhibits, testimony and/or argument related to Mr. William's medical history (ECF No. 154);

4. Exhibits, testimony and/or argument related to the fact that Mr. Williams' could not recall the name of his dentist and his lack of dental treatment from 2002-2011 (ECF No. 154);

5. Exhibits, testimony and/or argument related to the condition of Mr. Williams' other teeth (ECF No. 154);

6. Exhibits, testimony and/or argument related to Mr. Williams' noncompliance with medical recommendations (ECF No. 154);

7. Exhibits, testimony and/or argument related to Mr. Williams' alleged failure to mitigate his damages (ECF No. 154);

8. Exhibits, testimony and/or argument related to Mr. Williams' prescribed Percocet usage (ECF No. 154).

9. Exhibits, testimony and/or argument related to Dr. Raymond Fonseca's expert testimony (ECF No. 154);

10. Exhibits, testimony and/or argument related to Dr. Brian Kunz's expert testimony (ECF No. 154); and

11. The allegedly cumulative nature of Drs. Fonseca and Kunz's expert testimony. ECF No. 154.

In its December 17, 2021 Order, this Court denied Plaintiff's arguments to exclude Drs. Fonseca and Kunz's expert testimony. ECF No. 190.

Therefore, this Memorandum will constitute rulings on the only remaining evidentiary disputes, Nos. 1–8, and will note where definitive rulings may be reserved until trial begins.

### III.  RELEVANT FACTUAL ALLEGATIONS

Plaintiff Brian Williams ("Plaintiff") received dental care from Defendant Abraham Benshetrit ("Defendant") of the Saltz Dental Center in February 2018. Am. Compl. ¶ 12. Mr. Williams initiated this action, and alleged five claims against Dr. Benshetrit:[1]

(i) <u>Medical Malpractice</u>: Dr. Benshetrit deviated from an acceptable standard of dental care, specifically that Dr. Benshetrit negligently performed Mr. Williams' root canal and tooth extraction procedures; (<u>see</u> Count I, Am. Compl. ¶¶ 44–46)

(ii) <u>Lack of Informed Consent</u>: Dr. Benshetrit failed to adequately warn Mr. Williams of the seriousness and consequences of, and the alternative treatments to, the procedures he received, "vitiating" Plaintiff's consent; (<u>see</u> Count III, Am. Compl. ¶¶ 50–53)

(iii) <u>Fraudulent Misrepresentation</u>: Dr. Benshetrit fraudulently and intentionally misrepresented his experience performing root canal procedures to Mr. Williams; (<u>see</u> Count IV, Am. Compl. ¶¶ 54–58)

(iv) <u>Negligent Misrepresentation</u>: Dr. Benshetrit negligently misrepresented his experience performing root canal procedures to Mr. Williams. <u>See</u> Count V, Am. Compl. ¶¶ 59–63.

On November 23, 2015 Plaintiff's tooth number 18 was decayed such that a root canal procedure was recommended by Saltz Dental Center. Def. Resp. at 1. Plaintiff returned to have

---

[1] Plaintiff also asserted one claim of negligence against Saltz Dental Center, Count II, but this claim was dismissed with prejudice pursuant to the parties' April 15, 2020 stipulation. ECF No. 107.

this procedure done on February 13, 2018. Def. Resp. at 1; Am. Compl. ¶ 12. Defendant examined Plaintiff's tooth number 18 and determined either a root canal procedure or tooth extraction were appropriate courses of treatment to treat the tooth's decay. Def. Resp. at 1, Am. Compl. ¶ 14. With Plaintiff's apparent consent, Defendant attempted to numb Plaintiff, but was unable to do so successfully. Def. Resp. at 2; Am. Compl. ¶ 17. Defendant prescribed Plaintiff amoxicillin and requested he return the following week to resume the root canal procedure. Am. Compl. ¶ 18.

Upon Plaintiff's return on February 20, 2018, Defendant successfully numbed Plaintiff and commenced the root canal procedure. Def. Resp. at 2; Am. Compl. ¶ 19. During the procedure, Defendant determined Tooth No. 18's decay had progressed into the furcation of the tooth and was too advanced to be repaired by a root canal. Def. Resp. at 2; Am. Compl. ¶¶ 21–23. So, Defendant informed Plaintiff that an extraction of Tooth No. 18 would be the best course of treatment. Def. Resp. at 2; Am. Compl. ¶ 29. With Plaintiff's consent, Defendant began to perform the tooth extraction. Def. Resp. at 2; Am. Compl. ¶ 22. Defendant sectioned Tooth No. 18 but was unable to entirely remove it. Def. Resp. at 2. Defendant then recommended Plaintiff see an oral surgeon to remove the remainder the tooth. Def. Resp. at 2; Am. Compl. ¶ 23. Eighteen months later in September 2019, Plaintiff went to an oral surgeon, and Tooth No. 18 was finally extracted. Def. Resp. at 3.

## IV. <u>LEGAL STANDARD</u>

> The purpose of a motion in limine is to allow the trial court to rule in advance of trial on the admissibility and relevance of certain forecasted evidence. The trial court should exclude evidence on a motion in limine only when the evidence is clearly inadmissible on all potential grounds.
>
> A trial court considering a motion in limine may reserve judgment until trial in order to place the motion in the appropriate factual context. Further, a trial cout's ruling on a motion in limine is subject

to change when the case unfolds, particularly if actual testimony
differs from what was contained in the movant's proffer.

U.S. v. Tartaglione, 228 F. Supp. 3d 402, 406 (E.D. Pa. 2017) (internal citations omitted).

V. **DISCUSSION**

   A. **Damon Cary, DO's Testimony of Plaintiff's "Good Character"**

   1. Parties' Contentions[2]

Defendant anticipates Plaintiff will introduce "good character" evidence about himself through the testimony of Dr. Damon Cary. Def. Mot. at 17. Defendant argues the proffered testimony—that Dr. Cary knows Plaintiff to be a "very good guy", a "hard worker", and an "upstanding person"—is precluded character evidence under FED. R. EVID. 404(a) because Plaintiff cannot use it to prove that on particular occasions, such as during his root canal and tooth extraction procedures, Plaintiff acted in accordance with his "good character." Def. Mot. at 17–18.

Plaintiff seeks to introduce this evidence to rebut Defendant's defense, that Plaintiff's prescribed Percocet use precluded him from becoming sufficiently numb, because Plaintiff believes such a defense is scientifically baseless and will trigger juror bias. Pl. Resp. at 18. Specifically, Plaintiff alleges that defense counsel hopes "any jury hearing the word percocet, especially in today's 'opioid epidemic' will automatically label [Plaintiff] as a 'drug abuser' and someone of 'poor character.' If the person is African American and living in a city, like [Plaintiff] it will be held doubly true." Pl. Resp. at 18. So, Plaintiff's wants to introduce Dr. Cary's testimony of Plaintiff's "good character" to prevent jurors from labeling Plaintiff a drug abuser. Pl. Resp. at 18–19.

---

[2] This Court acknowledges the parties made additional arguments, regarding evidentiary issues A through H, to those restated in this Memorandum. All arguments made in the parties' respective briefing, whether restated herein or not, were considered in this Memorandum.

5

2.	Analysis

Plaintiff's intended use of Dr. Cary's "good character" testimony is improper pursuant to FRE 404(a)(1), and thus is inadmissible. Under FRE 404(a)(1), "evidence of a person's character or character trait is not admissible to prove that on a particular occasion the person acted in accordance with the character or trait." Plaintiff cannot introduce evidence of his "good character" to prove he was a "good person" when he received dental treatment from Defendant nor when he took his prescribed Percocets.

Dr. Cary's "good character" testimony is also irrelevant pursuant to FED. R. EVID. 401 because it does not tend to make any fact of consequence any more or less probable. FRE 401. Evidence that Plaintiff is a "very good guy", a "hard worker" and an "upstanding person" do not make facts related to liability, causation, or damages any more or less probable. Plaintiff fails to show the probative value of this evidence.

Plaintiff also cannot introduce this "good character" evidence because his counsel believes the "mention of the word Percocet" will trigger jurors' alleged bias against people like Plaintiff who take prescribed medications. Defendant makes no allegation, inference, or argument that Plaintiff ever abused his Percocet prescription or was a "drug abuser." In fact, Defendant seeks to establish the legitimacy of Plaintiff's prescription with evidence of Plaintiff's medical history, showing each physical injury Plaintiff sustained for which he was prescribed Percocets by his physician. Def. Mot. at 8. Plaintiff argues evidence of his medical history is irrelevant to this case. Pl. Resp. at 13. Plaintiff cannot simultaneously argue to exclude his medical history (infra Section V(C)(1)), evidence to substantiate the legitimacy of his Percocet use, and argue to include his "good character" for fear of being labeled a "drug abuser." Plaintiff's counsel's fear, that his client will be automatically labeled a drug abuser by jurors if the word "Percocet" is uttered, is

unsubstantiated, speculative, and does not provide a proper basis to introduce Dr. Cary's "good character" testimony.

### B. Exhibits, Testimony, and Argument Related to Plaintiff's Dental Insurance

#### 1. Parties' Contentions

Defendant seeks to admit evidence that Plaintiff had dental insurance and the contours of his insurance coverage to rebut Plaintiff's claim that he failed to secure recommended dental treatment because he was unable to afford it. Def. Mot. at 19–22.

Plaintiff counters that evidence of his dental insurance is inadmissible because Pennsylvania's collateral source rule provides that evidence of payments from collateral sources cannot be admitted to diminish the amount of damages a plaintiff would otherwise be entitled to recover. Pl. Resp. at 19.

#### 2. Analysis

If Plaintiff testifies at trial that he was unable to afford dental care, Defendant can introduce Plaintiff's admissions during his depositions, both that he had dental insurance and what his dental insurance covered, to impeach his credibility about his lack of funds to pay for dental work. Gallagher v. Pa. Liquor Control Brd., 883 A.2d 550, 558 (Pa. 2005) ("[t]his Court has followed the majority view that, although evidence of a plaintiff's recovery from collateral source is generally inadmissible and improper references may warrant a mistrial, an exception exists if the evidence of such recovery is relevant to a material issue in the case."). Plaintiff's assertion of his ability to afford dental treatment is collateral to the issue of liability. If Plaintiff opens the door on this issue, the fact that he had dental insurance is appropriate evidence on cross-examination, but the extent of this evidence may be limited.

### C. Exhibits, Testimony, and Argument Related to Plaintiff's Medical History

#### 1. Parties' Contentions

Plaintiff seeks to exclude evidence, testimony, and argument related to his medical history arguing such evidence is irrelevant and inadmissible pursuant to FED. R. EVID. 401, 402, and 403. Pl. Mot. at 12–14; Pl. Supp. Mot. at 4–6. Plaintiff argues his medical history, containing prior injuries he has sustained, is irrelevant to this case because said prior injuries have nothing to do with the injury Plaintiff accuses Defendant caused him in February 2018. Pl. Mot. at 13; Pl. Supp. Mot. at 5.

Defendant counters that Plaintiff's medical history is relevant for several reasons: (i) to rebut Plaintiff's claim for pain and suffering damages because Plaintiff's prior injuries are connected to Plaintiff's injury Defendant allegedly caused (Def. Resp. at 8–9; Def. Supp. Mot. at 2–5); (ii) to establish Plaintiff's pre-existing baseline of which activities he was able to perform and which he was unable to perform before he sustained the injury Defendant allegedly caused (Def. Resp. at 11); (iii) and to establish Plaintiff's prescribed Percocet use, which Defendant contends was the cause of Plaintiff's inability to become sufficient numb, not Defendant's alleged negligence. Def. Resp. at 11–12; Def. Supp. Mot. at 5–9.

#### 2. Analysis

Plaintiff's medical history is relevant to his claim for pain and suffering damages because "a tort feasor is liable for all injuries caused by his negligence . . . . [and] the term injuries necessarily refers as much to the aggravation of an already existing disability as it does to the infliction of an original wound." Pvorsky v. Engles, 188 A.2d 731, 733 (Pa. 1963). In his Amended Complaint, Plaintiff seeks damages for pain and suffering he avers Defendant's allegedly caused him:

> 40. As a further result of [Defendant's alleged] negligence and carelessness, . . . [the] **Plaintiff . . . has suffered medically determinable physical and/or mental impairment which prevents Plaintiff from performing all or substantially all of the material acts and duties which constituted Plaintiff's usual and customary activities prior to the Defendant's [alleged] negligence**.
>
> 41. As a further result of [Defendant's alleged] negligence and carelessness . . . **Plaintiff . . . has suffered severe physical pain, mental anguish, and humiliation, and may continue to suffer same for an indefinite time** in the future.
>
> 42. As a further result of [Defendant's alleged] negligence and carelessness . . . **Plaintiff . . . has and may hereinafter incur other financial expenses which he may otherwise be entitled to recover**.

Am. Compl. ¶¶ 40–42 (emphasis added). Plaintiff also contends, several times, that his prior injuries have nothing to do with this case because he fully recovered from them. Pl. Mot. at 13; Pl. Supp. Mot. at 5. But Plaintiff never alleges nor argues that he was not, in fact, taking his prescribed Percocets when Defendant treated him in February 2018. Without additional explanation, it does not appear that both of Plaintiff's contentions can be true: that (i) Plaintiff fully recovered from the injuries for which he was prescribed Percocets before Defendant treated him in February 2018, and (ii) that Plaintiff needed to take, and did take, these same prescribed Percocets when Defendant treated him in February 2018. If Plaintiff had fully recovered from his pre-2018 injuries before Defendant treated him, then why was Plaintiff taking a course of prescribed Percocets when Defendant treated him? Evidence of Plaintiff's medical history is relevant to answer this. Plaintiff's medical history is also relevant because it may help the jury understand the degree of Plaintiff's pain and his ability to perform daily tasks before Defendant treated him.

>    **D.     Exhibits, Testimony, and Argument Related to Plaintiff's Failure to Recall the Name of his Dentist and Plaintiff's Lack of Dental Treatment from 2002 to 2011**

>    1.     <u>Parties' Contentions</u>

Plaintiff seeks to exclude all exhibits, testimony, and argument related to both Plaintiff's failure to recall the name of his dentist and his failure to secure dental treatment from 2002 through 2011. Pl. Mot. at 14–16. Plaintiff argues his failure to recall the name of his dentist and his lack of dental care for almost nine years are irrelevant to the treatment at issue and inadmissible pursuant to FED. R. EVID. 401 and 402. Pl. Mot. at 15. Plaintiff also argues evidence of his failure to secure dental treatment between 2002 and 2011 will "mislead the jury into believing that [Plaintiff] neglected his oral health" in violation of FED. R. EVID. 403. Pl. Mot. at 15.

Defendant intends to use Plaintiff's lack of dental treatment in its case-in-chief to establish Plaintiff's comparative negligence and to cross-examine Plaintiff. Def. Resp. at 13. Defendant argues Plaintiff's failure to receive dental treatment for nine years is relevant to rebut Plaintiff's claim that he is a compliant dental patient who diligently follows up with his dentists' recommendations. Def. Resp. at 18–19. Defendant contends Plaintiff's failure to have dental care for nine years is admissible pursuant to FED. R. EVID. 406 because "it establishes a pattern of conduct that [Plaintiff] failed to routinely treat with dental providers" that he continued as a patient at Saltz Dental Center. Def. Resp. at 19.

>    2.     <u>Analysis</u>

This Court reserves judgment of this evidentiary issue for trial because it is not clear what evidence, if any, Plaintiff will offer on this issue. However, Plaintiff's inability to recall the name of his dentist is collateral and inadmissible.

### E. Exhibits, Testimony, and Argument Related to Plaintiff's Dental History and the Condition of Plaintiff's Other Teeth

#### 1. Parties' Contentions

Plaintiff seeks to exclude all evidence, testimony, and argument related to Plaintiff's dental history and the condition of his other teeth. Plaintiff argues such evidence, testimony, and argument is irrelevant and inadmissible pursuant to FED. R. EVID. 401, 402, and 403. Pl. Mot. at 16–18. Plaintiff argues the only tooth at issue is Tooth No. 18, so any other treatments Plaintiff secured or was recommended for his other teeth are irrelevant and unrelated to his claims against Defendant. Pl. Mot. at 17.

Defendant counters that both Plaintiff's dental history and the condition of his other teeth are relevant to rebut Plaintiff's claim that Defendant performed the root canal and extraction procedures without Plaintiff's informed consent. Def. Resp. at 22. In his Amended Complaint, Plaintiff lodges one count, Count III, against Defendant for failure to obtain informed consent. See Count III, Am. Compl. ¶¶ 51–53. In Count III, Plaintiff alleges,

> 51. Defendant . . . failed to properly, adequately, and efficiently inform, advise and disclose and/or warn the Plaintiff . . . of the seriousness, normal consequences, alternative treatment measures and treatments, the feasibility of any alternative and/or risk of the proposed operative procedures which were ultimately performed or not performed, . . . upon . . . Plaintiff . . . thereby vitiating any consent on the part of Plaintiff.
>
> 52. The risk of which the Plaintiff was not informed, specifically perforation and fracture of the tooth, were experienced by the Plaintiff after the action or inaction by the Defendant. . . .
>
> 53. The lack of informed consent as above-stated was directly, approximately and a substantial factor in causing the Plaintiff's injuries and damages as indicated aforementioned.

Am. Compl. ¶¶ 51–53. Defendant wants to introduce Plaintiff's dental history to show Plaintiff was aware of the risks, consequences, and alternatives to root canal and extraction procedures

11

because Plaintiff previously provided informed consent for these procedures on his other teeth. Def. Resp. at 23. Defendant specifically wants to introduce evidence that: Plaintiff consented to an extraction of Tooth No. 17 in 2011; an extraction of Tooth No. 30 in 2012; extractions of Teeth Nos. 1 and 2 in 2015; and root canals on Teeth Nos. 13 and 14 in 2016. Def. Resp. at 23.

2. Analysis

If a plaintiff proceeds only on a theory of negligence, evidence that he agreed to a procedure in light of the known risks is irrelevant because evidence of a plaintiff's consent does not make a defendant physician's negligence any more or less probable. Brady v. Urbas, 631 Pa. 329, 342 (Pa. Sup. Ct. 2015) ("[t]here is no assumption-of-the-risk defense available to a defendant physician which would vitiate his duty to provide treatment according to the ordinary standard of care.").

But if a plaintiff proceeds on a claim of a lack of informed consent, evidence of his consent can be relevant because a lack-of-consent claim sounds in battery, not in negligence. Montgomery v. Bazaz-Sehgal, 568 Pa. 574, 584 (Pa. 2002) ("A claim that a physician failed to obtain the patient's informed consent sounds in battery. . . . This Court has made clear on repeated occasions . . . that a claim based upon a lack of informed consent involves a battery committed upon a patient by a physician, an action which is distinct from a claim of consented-to, but negligently performed, medical treatment.") (internal citations omitted)).

A physician obtains his patient's informed consent when he provides his patient "with material information necessary to determine whether to proceed with the surgical or operative procedure or to remain in the current condition." Montgomery v. Bazaz-Sehgal, 798 A.2d 742, 748 (Pa. 2002); Festa v. Greenberg, 354 Pa. Super. 346, 350 (Pa. Super. Ct. 1986) ("In order for consent to be valid, the physician is duty bound to apprise the patient of such important matters as

the nature of the therapy, the seriousness of the situation, the disease and the organs involved and the potential results of the treatment."). Whether Plaintiff previously gave other dentists his informed consent for root canals and extractions has no tendency to prove the present allegation, that Defendant failed to provide Plaintiff "material information necessary to determine whether to proceed", any more or less probable pursuant to FRE 401. Bey v. Sacks, 789 A.2d 232, 239–240 (Pa. Super. Ct. 2001) (ruling trial court did not err when it excluded testimony that plaintiff knew of risks and alternatives to tooth extraction from previous extractions he consented to with other physicians because ultimate question for jurors to decide is whether the defendant-physician disclosed risks which a reasonable man would have considered material to his decisions whether or not to undergo treatment."). Therefore, Defendant cannot use Plaintiff's dental history to rebut Plaintiff's claim that he did not give Defendant his informed consent.

      **F.    Exhibits, Testimony, and Argument Related to Plaintiff's Noncompliance with Medical Recommendations**

          1.    <u>Parties' Contentions</u>

Plaintiff seeks to exclude all exhibits, testimony and argument related to Plaintiff's alleged noncompliance with recommendations he received for dental treatment because Plaintiff argues such evidence is irrelevant and inadmissible pursuant to FED. R. EVID. 401, 402, 403, and 404. Pl. Mot. at 18–19. Plaintiff argues any claim that he was non-compliant with Defendant's treatment and said non-compliance resulted in the loss of Tooth No. 18 is unsupported by the record and unrelated to whether Defendant deviated from an acceptable standard of care. Pl. Mot. at 19.

Defendant counterargues that evidence of Plaintiff's non-compliance is relevant because it establishes Plaintiff's comparative negligence. Def. Resp. at 14. Defendant avers he recommended a root canal to Plaintiff for Tooth No. 18 in September 2015, but Plaintiff chose not to receive this procedure then, instead opting to wait until February 2018. Def. Resp. at 18.

13

Plaintiff's non-compliance with Defendant's 2015 recommendation is relevant, Defendant argues, to establish: (i) Plaintiff's non-compliance caused Tooth No. 18's decay to progress to the point where the tooth was not salvageable in 2018; and (ii) Plaintiff has a pattern of non-compliance with recommendation for dental treatment given to him.  Def. Resp. at 18–19.

      2.    <u>Analysis</u>

          a.    **Admissibility of Evidence that Plaintiff's Non-Compliance with 2015 Root Canal Recommendation Caused Furcation Decay**

Defendant is correct that evidence of Plaintiff's noncompliance with a 2015 recommendation is relevant to the issue of liability (Plaintiff's comparative negligence) because it makes Plaintiff's claim—that Defendant's negligence was the only reason Plaintiff's Tooth No. 18 required extraction—less probable.  Plaintiff alleges "As a direct and proximate result and/or factual cause of the Defendant's . . . negligence and carelessness . . . the Plaintiff's [] tooth number 18 was permanently damaged and required extraction. . . ."  Am. Compl. ¶ 49.  Evidence that Plaintiff did not comply with a 2015 recommendation that Tooth No. 18 required a root canal, testimony that Plaintiff's three-year delay in getting said root canal allowed the tooth's decay to progress to the point that it reached the tooth's furcation, and evidence and testimony that Tooth No. 18's decayed furcation was the reason it needed to be extracted, are all relevant to rebut Plaintiff's claim that Defendant's negligence's caused Tooth No. 18's extraction.

          b.    **Admissibility of Evidence that Plaintiff has a Pattern or Habit of Non-Compliance with Recommended Dental Treatment**

However, Defendant cannot introduce evidence of Plaintiff's non-compliance to prove he has a pattern or habit of non-compliance with medical recommendations because the proposed evidence does not satisfy the specificity and frequency requirements of habit evidence.  Even if it were admissible habit evidence pursuant to FRE 406, FRE 403 precludes this evidence because it

may divert jurors' attention away from the core issue in this case: whether Defendant met the standard of care owed to Plaintiff.

FED. R. EVID. 406 permits evidence of a person's habit to prove that on a particular occasion the person acted in accordance with said habit. FRE 406. To establish Plaintiff's habit of non-compliance, Defendant must

> prove behavior approaching fixed regularity. Whether evidence of such. . . habit is admissible to show what occurred in a specific instance depends on the invariable regularity of the . . . habit. To be admissible, the usage must have sufficient regularity to make it probable that it would be carried out in every instance or in most instances.

Sutch v. Roxborough Memorial Hospital, 151 A.3d 241, 251–52 (Pa. Super. Ct. 2016) (internal citations omitted). "A habit . . . is the person's regular practice of meeting a particular kind of situation with a specific type of conduct, such as the habit of going down a particular stairway two stairs at a time." FRE 406, Advisory Committee Note; McCormick on Evidence, Section 195, 462–63 (2d ed. 1972). "In order to establish specific conduct as habit, a party must produce evidence establishing a degree of specificity and frequency of uniform response that ensures more than a mere tendency to act in a given manner, but rather, conduct that is semi-automatic in nature." York Int'l Corp. v. Liberty Mutual Ins. Co., 140 F. Supp. 3d 357, 362 (M.D. Pa. 2015). "Habit evidence 'is never to be lightly established, and evidence of examples, for purposes of establishing such habit, is to be carefully scrutinized before admission.'" Id. (quoting Dover-Hyman v. Southland Corp., 1993 WL 419705, *4 (E.D. Pa. Sept. 27, 1993)).

Defendant intends to introduce evidence that Plaintiff was noncompliant with recommended dental treatment on the following occasions:

(i)  in March 2012 Plaintiff refused recommended endodontic therapy to clean out decay in Plaintiff's Tooth No. 30;

(ii)  in April 2012 Plaintiff refused endodontic therapy for his Tooth No. 2;

15

(iii) in November 2015 Plaintiff refused endodontic therapy, in the form of a root canal, for his Tooth No. 18[3];

(iv) in November 2015 Plaintiff consented to extraction of Tooth No. 2;

(v) and that Plaintiff began endodontic therapy on Tooth No. 12 in August 2016 but never returned to complete the treatment. Def. Resp. at 21.

These five instances spanning four years do not prove that Plaintiff's non-compliance was more than a tendency not to comply nor semi-automatic in nature. See Reyes v. Missouri Pac. R. Co., 589 F.2d 791, 795 (5th Cir. 1979) (refraining from identifying the "precise quantum of proof necessary to" transform a general disposition into a habit, the Fifth Circuit ruled four prior convictions for public intoxication in three and one-half years were too irregular to constitute admissible habit evidence).

## G. Exhibits, Testimony, and Argument Related to Plaintiff's Alleged Failure to Mitigate his Damages

### 1. Parties' Contentions

Plaintiff argues all exhibits, testimony, and argument related to his alleged failure to mitigate his damages are inadmissible because "such evidence is confusing and misleading pursuant to F.R.E. 403." Pl. Mot. at 19–20. Plaintiff believes Defendant will try to introduce evidence that Plaintiff's three-year delay in securing the recommended root canal on Tooth No. 18 to prove Plaintiff failed to mitigate his damages. Pl. Mot. at 20. But Plaintiff argues this evidence is barred by FRE 403 (misleading) because the very fact that Defendant recommended a root canal for Tooth No. 18 in 2018, the same recommendation Plaintiff received in 2015, shows Plaintiff's three-year delay caused no deterioration of his tooth. Pl. Mot. at 20.

---

[3] Evidence that Plaintiff recommended a root canal on Tooth No. 18 in 2015 but delayed it until February 2018 and any consequences of this three-year delay are relevant and admissible. Supra Section V(F)(2)(a).

16

Defendant argues different evidence of Plaintiff's failure to mitigate—evidence that Plaintiff failed to return to an oral surgeon to complete Tooth No. 18's extraction for eighteen (18) months—is relevant to causation because it makes Plaintiff's comparative negligence more probable. Def. Resp. at 23–24. Plaintiff seeks damages for pain and suffering caused by Defendant's allegedly negligent extraction of Tooth No. 18. Defendant argues he must be able to introduce evidence that Plaintiff had the opportunity to prevent some of this pain and suffering had he gone to an oral surgeon to complete the extraction when Defendant told him to do so. Def. Resp. at 27.

2. Analysis

Evidence that Plaintiff failed to mitigate his damages when he allegedly waited eighteen (18) months to visit an oral surgeon to complete Tooth No. 18's extraction is relevant and admissible pursuant to FRE 401, 402, and 403 because Plaintiff may not recover for harm he incurred, but could have reasonably avoided. In a negligence action, the jury may consider "whether the plaintiff [] failed to mitigate damages." English v. Greyhound Bus Lines, Inc., 826 F. Supp. 2d 728, 730 (E.D. Pa. 2011); Utz v. Johnson, 2004 WL 3828095, at *1 (E.D. Pa. 2004). Whether the plaintiff failed to mitigate his damages is relevant because, "one injured by the tort of another is not entitled to recover damages for any harm that he could have avoided by the use of reasonable effort or expenditure after the commission of the tort." Restatement (Second) of Torts § 918 (1979).

Failure to mitigate evidence is also relevant when calculating damages because, "[i]n Pennsylvania, it is proper for a jury to consider the failure of the plaintiff to undergo surgery or medical treatment that an ordinarily prudent man would have submitted to under the circumstances in an effort to better his condition." Yost v. Union R. Co., 551 A.2d 317, 322 (Pa. Super. Ct.

17

1988); Greene v. United States, 2021 WL 1978436, at *7 (M.D. Pa. May 18, 2021). Although failure to mitigate evidence cannot wholly defeat liability it can diminish the amount of recoverable damages a plaintiff may be entitled to. Utz, 2004 WL 3828095, at *2 (E.D. Pa. 2004).

Here, Defendant seeks to introduce evidence that, during his first extraction appointment with Defendant in February 2018, Defendant allegedly informed Plaintiff he would need to see an oral surgeon to complete the extraction. Def. Resp. at 25. Defendant and Dr. Druhva both testified that they informed Plaintiff he needed to see an oral surgeon to complete the extraction Defendant started, and Dr. Druhva even allegedly offered to call an oral surgeon so Plaintiff could see one the very same day. Def. Resp. at 26. Plaintiff allegedly declined. Def. Resp. at 26. Approximately one week later, Defendant alleges Dr. Druhva spoke with Plaintiff again to reiterate his need to see an oral surgeon as soon as possible. Def. Resp. at 26–27. It was not until September 2019, eighteen months after Defendant began extracting Tooth No. 18, that Plaintiff finally had Tooth No. 18 completely extracted. Def. Resp. at 27. Defendant contends Plaintiff's alleged delay is relevant for the jury to ascertain Plaintiff's potential damages for pain and suffering because this evidence may establish Plaintiff could have reasonably avoided some of the harm he accuses Defendant of causing but chose not to. This Court agrees. Evidence that Plaintiff failed to mitigate his damages by failing to complete Tooth No. 18's extraction for eighteen months is relevant, admissible, and will not mislead the jury or cause undue delay.

### H. Exhibits, Testimony, and Argument Related to Plaintiff's Prescribed Use of Percocets

#### 1. Parties' Contentions

Plaintiff argues all exhibits, testimony, and argument related to his prescribed Percocet use must be excluded for three reasons: (i) it is irrelevant and inadmissible pursuant to FRE 401 and 402 (Pl. Mot. at 23); (ii) it will mislead jurors in violation of FRE 403 because Plaintiff "fully

recovered from his work-related injuries with no residual impairment[] and is no longer taking [P]ercocet," (Pl. Mot. at 24 n.4)[4]; and (iii) it is inadmissible to establish Defendant's defense—that Plaintiff's Percocet use inhibited his ability to become sufficiently numb by lidocaine—because the chemical interaction between Percocets and lidocaine does not survive Daubert's reliability and fit standards. Pl. Mot. at 23–27.[5]

Defendant seeks to introduce evidence of Plaintiff's prescribed Percocet on rebuttal to offset the amount of pain and suffering damages to which Plaintiff may be entitled (Def. Mot. at 31–32), and as part of Defendant's case-in-chief to establish Plaintiff's contributory negligence. Def. Mot. at 32–34.

### 2. Analysis

The Court will likely allow limited cross-examination of Plaintiff on this topic. The Court reserves judgment on further evidentiary disputes on this topic until trial.

### VI. CONCLUSION

An appropriate Order follows.

O:\Alessandra.2021\Williams v. Benshetrit (19-797)\DRAFT #4- Memo deciding ALL Motions in Limine.docx

---

[4] Plaintiff makes no argument that he did not take Percocets in February 2018 when Defendant allegedly harmed him.

[5] Plaintiff's argument, that evidence of his prescribed Percocet use does not survive the standards set forth in Daubert v. Merrell Dow Pharmaceuticals, 509 U.S. 579 (1993) and FRE 702, is denied pursuant to this Court's December 17, 2021 Order. ECF No. 190.